1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7   VICTOR EMEONYE,                    )    No. 04-03386 SC
                                       )
8              Plaintiff,              )
                                       )    ORDER GRANTING
9      v.                              )    PLAINTIFF'S MOTION
                                       )    FOR SUMMARY JUDGMENT
10  MICHAEL J. ASTRUE,                 )    AND DENYING
             Commissioner of Social    )    DEFENDANT'S CROSS-
11  Security,                          )    MOTION FOR SUMMARY
                                       )    JUDGMENT
12             Defendant.              )
                                       )
13  _____   )

14  **I.   INTRODUCTION**

15       This matter is before the Court on cross-motions for summary

16  judgment filed by the plaintiff Victor Emeonye ("Plaintiff" or

17  "Claimant") and the defendant Michael J. Astrue ("Defendant").

18  Docket Nos. 28, 30.  Plaintiff submitted a Reply.  Docket No. 31.

19  Plaintiff seeks review and reversal of the Social Security

20  Commissioner's final decision denying his claim for Social

21  Security Disability Insurance benefits.  For the reasons set forth

22  below, the Court GRANTS Plaintiff's Motion for Summary Judgment

23  and DENIES Defendant's Cross-Motion for Summary Judgment.

24

25  **II.  BACKGROUND**

26       **A.   Procedural**

27       In August 2004, Plaintiff filed a Complaint seeking review of

28  the Social Security Commissioner's denial of disability benefits.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   Docket No. 1.  After the parties filed cross-motions for summary

2   judgment, this Court issued an Order remanding the claim to the

3   Administrative Law Judge ("ALJ") for further consideration of

4   newly-discovered evidence of Plaintiff's recurring seizures.  See

5   Order, Docket No. 23.  A second hearing was held and Plaintiff's

6   claim for disability benefits was again denied.  Administrative

7   Record ("AR") at 327-336.[1]

8        On January 16, 2007, after the hearing but before the ALJ

9   issued a decision, Plaintiff unexpectedly died.  AR at 309.

10  Plaintiff was 49 years old.  Id.  Neither party has indicated the

11  cause of Plaintiff's death.  The Court can only assume, therefore,

12  that his death was not related to his health issues.  Were this

13  otherwise, Plaintiff's death could have provided key evidence of

14  the severity of Plaintiff's medical conditions.

15       In any event, after Plaintiff died, the parties submitted a

16  stipulation, which this Court approved, substituting Plaintiff's

17  daughter, Thelma Brittany Emeonye, a minor child, in Plaintiff's

18  stead.  Docket No. 27.  Although Plaintiff's claim for

19  Supplemental Security Income benefits under Title XVI is

20  extinguished by this substitution, Plaintiff's claim for Social

21  Security Disability Insurance benefits under Title II is

22  unaffected.  See Pl.'s Mot. Summ. J. at 3.  Therefore, the

23  analysis regarding Plaintiff's claim is unchanged by the

24

25       [1]  As Plaintiff's claim has been remanded once already, two
     separate Administrative Records exist.  The more recent AR, dated
26   June 19, 2007, is the operative AR for the current action and shall
     be referred to as simply "AR."  The previous AR, which the Court
27   relied upon in it's initial Order remanding Plaintiff's claim, is
     dated October 20, 2004, and shall be referred to as the "2004 AR."

28

1    substitution of Plaintiff's daughter for Plaintiff.

2        **B.    Factual**

3        As a preliminary matter, the Court must take note of several

4    disturbing factual inaccuracies in the record.  Most prominently

5    and egregiously, the entire first paragraph of the Statement of

6    the Case in Defendant's Cross-Motion for Summary Judgment contains

7    not one fact or citation that is even remotely related to

8    Plaintiff's action.  For example, the first sentence in this

9    paragraph states, "Plaintiff was born on February 13, 2007 (Tr.

10   22, 56)."  Def.'s Mot. at 2.  Plaintiff Emeonye, however, was born

11   August 15, 1958, as even the most cursory examination of the

12   record demonstrates.[2]  See, e.g., AR at 17.  Submissions

13   containing such factual errors indicate a remarkable inattention

14   to even the most basic details.

15       The other factual discrepancy worth noting is in the ALJ's

16   decisions themselves.  In both the decision issued on February 19,

17   2004, AR 27-31, and the decision issued on February 2, 2007, id.

18   at 330-36, the ALJ inexplicably states that Plaintiff "was born in

19   Nicaragua."  AR at 28, 331.  As stated on his death certificate

20   and as noted by at least two of Plaintiff's medical examiners,

21   however, Plaintiff was from Nigeria, not Nicaragua.  See AR at

22   151, 309, 528.  Such factual mistakes are troubling.

23       Plaintiff worked as a security guard from 1986 to 2002.  2004

24   AR at 28.  On June 4, 2002, he was stabbed multiple times and

25

26   ───────────────
         [2]  It is equally clear that this birth date does not pertain
27   to Plaintiff's daughter, who, at the time of this Order, is a
     teenager.

28                                    3

United States District Court
For the Northern District of California

suffered injuries to the chest, neck, abdomen, and hand.  AR at 135.  He was taken to San Francisco General Hospital, where he underwent open-heart surgery to repair a "very complex laceration of the right ventricle" and to remove a "large amount of clot" in the pericardium.  Id.  Plaintiff's attending surgeons also performed a limited upper abdominal exploration, but elected not to undertake a full exploratory laparotomy because of the extensive adhesions already present in his abdomen as a result of a 1997 incident in which he was shot.  Id.  Plaintiff remained in the hospital for eight days and was released with a good prognosis.  AR at 138.  Plaintiff alleged that he had been disabled since the date of the stabbing, June 4, 2002.

After his discharge from the hospital, Plaintiff began to experience severe migraine headaches, nausea, watery eyes, and dizziness.  AR 215-17; 258-63.  As a result of these symptoms, Plaintiff visited medical centers in October, November, and December 2002, and again in January, February, and March 2003. 2004 AR at 213-17.

On February 9, 2003, Plaintiff had a seizure and was treated at San Francisco General Hospital.  AR at 124.  A CT scan taken days later revealed a chronic subdural hematoma.  Id. at 209-10. A subsequent CT scan taken May 6, 2003, confirmed this diagnosis and also revealed a "left inferior temporal fossa, possibly related to post traumatic encephalomalacia."  Id. at 265.  A third CT scan was performed on March 3, 2004, after Plaintiff's initial December 10, 2003, hearing.  Id. at 483.  This exam revealed no significant changes in his physiological condition, although it

4

was noted that there was "[m]ore focal volume loss . . . in the left inferior temporal and frontal lobes." Id.

Plaintiff experienced another seizure on April 28, 2004, for which he was treated at Seton Medical Center. 2004 AR 19-20. Plaintiff was instructed to see a physician for follow-up care, and was discharged with a prescription for Dilantin anti-seizure medication. Id. at 19. On May 1, 2004, Plaintiff checked in to the Emergency Department of the Saint Francis Medical Center, where he received medical attention for hallucinations and possibly another seizure. Id. at 21; AR at 332. In October 2005, Plaintiff suffered another seizure. AR at 332.

**III. LEGAL STANDARD**

To qualify for disability benefits, a claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A). In making this determination, "an ALJ conducts a five step inquiry. 20 C.F.R. §§ 404.1520 & 416.920." Lewis v. Apfel, 236 F.3d 503, 508 (9th Cir. 2001).

> The ALJ first considers whether the claimant is engaged in substantial gainful activity; if not, the ALJ asks in the second step whether the claimant has a severe impairment (i.e., one that significantly affects his or her ability to function); if so, the ALJ asks in the third step whether the claimant's condition meets or equals one of those

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> outlined in the Listing of Impairments in
> Appendix 1 of the Regulations [20 C.F.R.
> §§ 404.1520(d) & 416.920(d)]; if not,
> then in the fourth step the ALJ asks
> whether the claimant can perform in his
> or her past relevant work; if not,
> finally, the ALJ in the fifth step asks
> whether the claimant can perform other
> jobs that exist in substantial numbers in
> the national economy.  20 C.F.R. §§
> 404.1520(b)-404.1520(f)(1) & 416.920(b)-
> 416.920(f)(1).

Id.

Courts may set aside a decision of the ALJ if it is not supported by substantial evidence.  42 U.S.C. § 405(g); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).  "Substantial evidence" is the relevant evidence which a reasonable person might accept as adequate to support the ALJ's conclusion.  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  In order to be "substantial," the evidence must amount to "more than a scintilla," but need not rise to the level of a preponderance. Holohan, 246 F.3d at 1202.  Where the evidence could reasonably support either affirming or reversing the ALJ's decision, a court may not substitute its judgment for the ALJ's decision.  Id.

**IV.  DISCUSSION**

Plaintiff asserts three independent justifications for reversing the ALJ's finding and granting disability benefits. Plaintiff's first argument is that the ALJ ignored evidence that established that Plaintiff had an impairment equal to a listing impairment of Appendix 1, and the ALJ therefore erred by not finding Plaintiff disabled.  As resolution of this issue disposes of the entire action, the Court need not reach Plaintiff's

1   remaining two arguments.

2      **A.   Failure to Consider Evidence Establishing that**

3          **Plaintiff's Impairment Equals a Listed Impairment**

4      As noted above, in the third step of his inquiry, "the ALJ

5   asks . . . whether the claimant's condition meets or equals one of

6   those outlined in the Listing of Impairments in Appendix 1 of the

7   Regulations." <u>Lewis</u>, 236 F.3d at 508 (citing 20 C.F.R. §§

8   404.1520(d) & 416.920(d)).  20 C.F.R. § 404.1525(c)(5) states that

9   if a claimant's impairment "does not meet the criteria of a

10  listing, it can medically equal the criteria of a listing."

11  Medical equivalence may exist if the impairment "is at least equal

12  in severity and duration to the criteria of any listed

13  impairment."  20 C.F.R. § 404.1526(a).

14     Plaintiff asserts that his mental impairments equal the

15  severity of the Listing Impairment for mental retardation and that

16  Plaintiff therefore is disabled.  To satisfy the requirements for

17  the Listing for mental retardation, a plaintiff must "satisf[y]

18  the diagnostic description in the introductory paragraph and any

19  one of the four sets of criteria."  20 C.F.R. Pt. 404, Subpt. P,

20  App. 1, § 12.00.  The introductory paragraph states:

21          Mental retardation: Mental retardation
            refers to significantly subaverage
22          general intellectual functioning with
            deficits in adaptive functioning
23          initially manifested during the
            developmental period; i.e., the evidence
24          demonstrates or supports onset of the
            impairment before age 22.  The required
25          level of severity for this disorder is
            met when the requirements in A, B, C, or
26          D are satisfied.

27

28                                     7

<u>Id.</u> at § 12.05.

    The parties do not dispute that the requirements of subpart C are the only requirements germane to the present action.  These requirements are: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . ."  <u>Id.</u>  Neither party disputes the fact that Plaintiff was diagnosed with a performance I.Q. of 67.  <u>See</u> AR 523.  In addition, both parties agree that Plaintiff has a "physical or other mental impairment . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  Indeed, as Defendant concedes, "the ALJ found that Plaintiff satisfied the severity requirement." Def.'s Mot. at 7.  The ALJ, in his report, stated: "The medical evidence establishes that the claimant has severe chronic subdural hematoma . . . ."  AR at 335.  Finally, neither party argues that there is any evidence to support onset of the impairment before Plaintiff was 22.  The issue, therefore, is whether it is possible for Plaintiff to medically equal the Listing Requirements for mental retardation if there is no evidence of early onset.  The Court answers this question in the affirmative.

    As the regulations state, medical equivalence can be found in three ways, two of which are relevant to the present action:

        (1) If you have an impairment that is described in appendix 1, but . . . [y]ou do not exhibit one or more of the findings specified in the particular listing . . . [w]e will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to

<b>United States District Court</b><br>For the Northern District of California

8

United States District Court
For the Northern District of California

the required criteria.
(2) . . . .
(3) If you have a combination of impairments no one of which meets a listing . . ., we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526(b).

The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance. See id.

Under either subsection listed above, Plaintiff's medical impairments equaled the requirements for mental retardation. It is undisputed that Plaintiff was diagnosed with a performance I.Q. of 67 and was found to have a severe impairment of a subdural hematoma and suffer from seizures. The only requirement Plaintiff did not satisfy for mental retardation was evidence of early onset. The Court is convinced, however, that the severity of Plaintiff's medical impairments today, rather than when evidence of such impairments first presented, is the crucial question for determining whether Plaintiff's impairments equal the Listing requirements.

**United States District Court**
For the Northern District of California

1    To satisfy § 404.1526(b)(1), Plaintiff must have "other
2    findings related to [his impairment] that are at least of equal
3    medical significance to the required criteria."  20 C.F.R. §
4    404.1526(b)(1).  Plaintiff's severe impairment of subdural
5    hematoma and Plaintiff's pattern of seizures are of more than
6    equal medical significance to the required criteria of early
7    onset.  Pursuant to § 404.1526(b)(1), therefore, Plaintiff's
8    impairments equal those of the Listing for mental retardation and
9    Plaintiff was disabled.

10       In the alternative, Plaintiff also satisfies §
11   404.1526(b)(3).  Plaintiff's combination of impairments "are at
12   least of equal medical significance to those of [mental
13   retardation]."  20 C.F.R. § 404.1526(b)(3).  Accordingly,
14   Plaintiff's "combination of impairments is medically equivalent to
15   that listing."  Id.

16       These findings are consistent with 20 C.F.R. §
17   404.1525(c)(5), which states that if a claimant's impairment "does
18   not meet the criteria of a listing, it can medically equal the
19   criteria of a listing."  If a plaintiff were required to actually
20   meet every requirement of a listing, as Defendant suggests in his
21   brief, § 404.1525(c)(5) would be meaningless.  For these reasons,
22   the Court finds that Plaintiff's medical impairments were equal to
23   the Listing requirements for mental retardation, and, therefore,
24   Plaintiff was disabled.

25       Given the deference with which this Court must treat the
26   decision of the ALJ, this Court's analysis of the issue is not
27   necessarily dispositive.  Thus, a brief examination of the ALJ's

28                                10

opinion is required.  The ALJ stated:

> [A]lthough Dr. Kollath reported a . . .
> performance I.Q. of 67, his recent
> clinical findings and assessment of
> mental capacities reveal no medically
> determined mental disorders imposing more
> than slight work related limitations.
> The test scores are not associated with a
> diagnosis of mental retardation or any
> corroborating evidence of a history since
> before age 22 of impaired intellectual
> functioning, so the requirements of
> section 12.05 C are not found to be met
> or equaled.

AR at 334.

It is clear from the ALJ's decision that he did not properly analyze the issue of whether Plaintiff equaled, rather than met, the Listing requirement for mental retardation.  Although the ALJ properly noted that because there was no evidence of early onset, Plaintiff's medical impairments did not meet the Listing requirements, there is no discussion of why Plaintiff did not equal the listing requirements.

"[I]n determining whether a claimant equals[, rather than meets,] a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990); see also Galaspi-Bey v. Barnhart, No. 01-1770, 2002 WL 31928500, at *3 (N.D. Cal. Dec. 23, 2002) (stating that "in determining medical equivalency under step three, the ALJ must adequately explain his comparative evaluation of the applicant's impairment to the listed impairment").  Applying this standard to the findings in this case, the Court finds that the ALJ's statement that Plaintiff did

11

not equal the listing was insufficient.  <u>Marcia</u>, 900 F.2d at 176.
The Court therefore finds that the ALJ committed legal error in
his medical equivalency analysis.

"The decision to remand the case for additional evidence or
simply to award the benefits is within the discretion of the
court."  <u>Erickson v. Shalala</u>, 9 F.3d 813, 819 (9th Cir. 1993).
Where the record is fully developed, remand is unnecessary.  <u>Id.</u>
In the present case, the record is fully developed.  There are no
"outstanding issues that must be resolved before a determination
of disability can be made." <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178
(9th Cir. 2000).  Nor would "additional proceedings . . . remedy
defects in the original administrative proceeding . . . ."
<u>Marcia</u>, 900 F.2d at 176-77 (internal quotation marks omitted).

**V.    <u>CONCLUSION</u>**

For the foregoing reasons, the Court GRANTS Plaintiff's
Motion for Summary Judgment and DENIES Defendant's Motion for
Summary Judgment.  The matter is remanded to the Commissioner so
that he may calculate and award benefits with an onset date of
June 2, 2002.


IT IS SO ORDERED.


Dated: May 5, 2008

_____
UNITED STATES DISTRICT JUDGE